# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### LEXINGTON DIVISION

**CIVIL ACTION NO. 04-487-JBC**

**MOTORISTS MUTUAL INSURANCE COMPANY,**                                    **PLAINTIFF,**

**V.**                            **MEMORANDUM OPINION AND ORDER**

**THOMAS R. POST,**                                            **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motions of the plaintiff, Motorists Mutual Insurance Company ("Motorists"), for summary judgment and the defendant, Thomas Post ("Post"), for declaratory judgment (DE 14, 15). Because Post asks this court to rule on the record before it, the court construes his motion as one for partial summary judgment. The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and will grant the defendant's motion.

**Facts**

Although many of the facts in this case are undisputed, in reviewing each party's motion, the court looks at the facts in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).

In 1968, Rex Martin purchased and improved real property in Woodford County, Kentucky. In 1999, Mr. Martin transferred the property to a trust, naming himself as trustee. Motorists issued property and casualty insurance on the property during the period relevant to this litigation.

In August 2003, Mr. Martin died and his widow, Linda Wright Martin, was named as the new trustee of the property. In November 2003, Mrs. Martin sold the property and assigned rights in the Motorists insurance policies to the defendant, Thomas Post. In December 2003, following Post's acquisition of the property, Mrs. Martin submitted a claim to Motorists for damage to the property in wind and ice storms in November 2002 and February 2003. Motorists rejected the claim as untimely and, therefore, not in compliance with the insurance contract. After a series of settlement discussions, Post demanded an appraisal of the value of loss as provided in the insurance contract. Subsequently, Motorists filed this action seeking a declaratory judgment denying coverage under the insurance contract. Post requests that this court enforce the appraisal provision in the insurance contract.

**Standard of review**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

2

242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

**Motorists' Motion For Summary Judgment**

Motorists argues that it is entitled to summary judgment on three grounds. First, Motorists argues that it did not receive prompt notice of loss and is therefore not obligated to provide coverage. Second, Motorists argues that there was a failure to preserve, save, and protect the property and that this failure absolves Motorists of any liability under the insurance policy. Third, Motorists argues that there was faulty design, workmanship, or construction of buildings on the property and, therefore, Motorists is not liable under the terms of the insurance policy.

**a.    Failure to provide prompt notification of loss**

In 1991, the Supreme Court of Kentucky considered whether, and under what circumstances, failure to provide prompt notice of loss to an insurance company would defeat the company's obligation to provide coverage. *Jones v. Bituminous Cas. Co.*, 821 S.W.2d 798, 801 (Ky. 1991). The court held that an insurer may not deny coverage because an insured failed to provide prompt notice of loss unless the insurer suffered substantial prejudice. *Id.* at 802-03. An insurance company has the burden of proving that it is reasonably probable that it suffered prejudice from the delay in notice. *Id.* at 803. Summary judgment is appropriate on the issue of prejudice only where proof of prejudice is conclusive or

3

there is failure of proof on the subject. *Id.*

Following the teachings of *Jones*, three reasons exist for refusing to interpret a "prompt notice clause" as requiring a strict forfeiture of any rights under the policy. First, *Jones* teaches that insurance contracts are often contracts of adhesion; they are offered to the consumer on a take-it-or-leave-it-basis. Therefore, any ambiguity in the contract must be interpreted in favor of the insured. *Id.* at 801-02. "A strict forfeiture interpretation of the prompt notice requirement excludes from the equation . . . the question whether the insurance carrier suffered any substantial prejudice from the delay. Absent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences, the reach of the term and the consequences are vague." *Id.* at 802. Second, the doctrine of reasonable expectations works against strict forfeiture. "[O]nly an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* Finally, to allow an insurer to deny coverage based merely on an insured's failure to provide notice would provide a windfall to the insurance company. *Id.* "By adopting a rule requiring proof of prejudice from a delay in notification, all the insurance company is being required to do is to take the risk it was paid to take rather than escape liability for coverage otherwise provided." *Id.*

Examining the insurance contract in this case, the court does not find any unequivocally conspicuous manifestation of Motorists' intent that the prompt notice

clause would allow denial of coverage. Additionally, to allow Motorists to deny coverage absent a showing of prejudice provides it with a windfall, as Motorists would have reaped the benefit of the insurance premiums without any liability for subsequent loss. Therefore, under *Jones*, the court cannot issue judgment for Motorists based merely on Post's failure to give prompt notice.

Motorists urges the court to distinguish *Jones*, arguing that it applies only to cases of third-party liability. Motorists cites *Hiscox v. Wilson*, 246 F. Supp. 2d 684, 692 (E.D. Ky. 2003). At issue in *Hiscox* was whether an insured's failure to provide "immediate notice" to its insurer allowed the insurer to deny liability. The *Hiscox* court refused to follow *Jones* because of a unique combination of facts specific to that case. *Hiscox*, 246 F. Supp. 2d at 692. First, and most importantly, the *Hiscox* court noted that there were clear, unambiguous terms stating that "immediate notice" was a "condition precedent" to insurer liability. *Id.* at 689, 692. Second, the insurance contract at issue in *Hiscox* was not a contract of adhesion, as the insured was able to negotiate some of the terms. *Id.* Finally, although *Hiscox* noted that the application of *Jones* to first-party insurance controversies had not been litigated in Kentucky courts, it also recognized that the insurance policy in that case was for unique risk equine coverage and required a different analysis than that which would be required for general liability insurance. *Id.* at 693-94. Because of these distinguishing factors, this court declines to follow *Hiscox*.

Motorists also argues that it has suffered prejudice by the delay in notice.

Specifically, Motorists argues that, had it inspected the property immediately after the storms, it could have determined exactly how much of the damage was caused by the storms and how much money to pay under the terms of the policy. In refuting this argument, Post offers the deposition testimony of a structural engineer, who states that 85-90 percent of the damage to the property was caused by the storms. Therefore, Post argues, Motorists has not shown substantial prejudice as a matter of law. Viewing the conflicting evidence in the light most favorable to the nonmoving party, an issue of material fact exists as to whether Motorists suffered substantial prejudice. Therefore, it is inappropriate for the court to enter judgment at this time.

**b.      Failure to Save, Preserve, and Protect the Property**

Motorists claims that Mrs. Martin failed to make reasonable repairs to the property after the storms and that, therefore, Post's claims are excluded under the policy. Specifically, Motorists contends that Mrs. Martin did not waterproof the house after the storms and that this failure to waterproof led to a proliferation of mold. Post argues that the policy exclusion does not apply because Mrs. Martin instructed the property's caretaker to "locate leaks, repair them where possible, and to keep water off the floor." Mrs. Martin also noted that 45 buckets of tar were used to repair the roof. Based on the record before the court, which shows conflicting evidence as to the extent and adequacy of the repairs conducted by Mrs. Martin, it is inappropriate for the court to award summary judgment to

6

Motorists on this issue.

**c.    Faulty Design, Workmanship, or Construction**

Motorists argues that Post's claims are excluded because the damage was caused by pre-existing conditions, defective construction, and improper maintenance. Specifically, Motorists argues that the roof of the Castle was constructed without proper flashing and that the roof was improperly maintained. In refutation, Post notes that, prior to the storms, Motorists' policies had always described the building construction as "superior." The court finds that this inconsistency creates an issue of fact as to whether the building was adequately designed and constructed and, therefore, summary judgment is inappropriate on this issue.

**Post's Motion for Partial Summary Judgment**

"As a general matter, public policy favors alternate resolution procedures like the appraisal process." *Cigna Ins. Co. v. Didimoi Property Holdings*, 110 F. Supp. 2d 259, 269 (D. Del. 2000). If an appraisal is allowed under the terms of an insurance contract, the court may let the appraiser determine both the cause of loss and the amount of loss. *Id.* at 268-69. However, the scope of coverage – whether an event is covered under the terms of the policy – is for the court to determine as a matter of law. *Id.* at 268. *See also Auto Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 470 (Mich App. 1991); *Kawa v. Nationwide Ins. Co.*, 664 N.Y.S. 2d 430, 431 (1997).

The insurance policies at issue in this case allow either party to demand an appraisal should there be a dispute as to the value of a covered loss. A review of the language in the insurance policies shows that wind and ice storm damage are covered events. Nor does Motorists deny that, ordinarily, storm damage would be a covered event under the policies. Indeed, Motorists denies coverage based on fact-sensitive defenses that are not appropriate for adjudication at this stage in the proceedings. Motorists expresses concern that the appraisal process will result in an award of damages resulting from construction and maintenance defects. In his reply brief, Post states that he is entitled to compensation for only those damages resulting from the wind and ice storms in 2002 and 2003; he maintains that he is not entitled to damages from alleged construction and maintenance deficiencies. Post's admission that he is eligible only for those damages suffered directly after the storm is in accord with Motorists' desire that any appraisal not consider losses that were exacerbated by the alleged construction and maintenance defects. Motorists' fears may be assuaged by an appropriate instruction that the appraisers consider only damages resulting directly from the storms.

Finally, Motorists argues that the appraisal process is impractical following a fire that destroyed much of the evidence of damage. According to Motorists, it would be impossible for it to appoint an appraiser or for the parties to select an umpire. Absent any citation to authority, the court does not credit this argument. Both parties have had experts examine the site and report on the extent and

8

probable causes of the damage. Despite the destruction of evidence, it will be no more difficult for an appraiser to determine the value of losses than it would be for any other finder of fact. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 14) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for a declaratory judgment (DE 15) is **GRANTED**. In determining the value of loss, the appraisers and umpire shall consider only damage resulting directly from the wind and ice storms in November 2002 and February 2003. Under no circumstances shall the appraisers or the umpire consider the value of loss to include damage from poor construction or from failure to save, preserve, or protect the property, or from faulty design, workmanship, or construction of the property. The parties are to complete the appraisal process by February 20, 2006, and the parties shall report to the court no later than March 25, 2006, or within 10 days after conclusion of the appraisal process, whichever is earlier, regarding their proposed plan for resolution of outstanding issues.

Signed on October 20, 2005



Jennifer B. Coffman

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

9